Good morning, Your Honors. My name is Gary Dukoff. I co-authored the briefs, and I'm going to be appearing on behalf of Petitioner Victor Diep this morning. I'd like to reserve two of my ten minutes for rebuttal, if I might. Yeah, and if you look at the clock, it counts down. Oh, I see. Great. Thank you, Your Honor. A constitutional principle that manifests itself across numerous doctrinal areas of the criminal law is that racism that contaminates the impartial decision-making guaranteed by the Sixth Amendment is categorically unacceptable. And when you read the cases that address the vestiges of racism in the criminal justice system, you see language that's forceful, high-minded, unequivocal, and really oftentimes beautiful. And, of course, that's the area of law I would like the panel to concentrate on, not the area of law that we're going to discuss this morning, that Federal courts must defer to State courts on habeas review. I understand that the gateway tests of Section 2254d are oftentimes the hurdles that we must overcome in habeas cases, and that's what I'm going to talk about this morning. Specifically, starting with 2254d-2, unreasonable determination of facts, there are a couple of independent, albeit related, factual findings made by the State appellate court that Petitioner is contending are unreasonable for several reasons that I'll list. But the two findings are, number one, that the juror testimony refuted the assertions that any racially-based statements were made, and, number two, that this discussion of Mr. Dieff's gang membership played only a fleeting or transitory role in the deliberations. And the reason that this is — these findings are so critical, and I'll preface my discussion with saying this, is that they — they went directly to the large holes in the evidence presented by the prosecution, because the prosecution was pursuing a theory that Mr. Dieff was involved in this murder, this horrendous murder, for financial gain. He was getting paid, and that was his sole motive for doing it. But yet there was no evidence of any payment or any connection, indeed, between Mr. Dieff and the fellow who was proven to have arranged all of this, Mr. Wu. So there was that big gaping hole in the prosecution's case that could be filled with the racial stereotype we know was voiced in the jury room, which is that Asians hoard money, they don't trust banks, and therefore you wouldn't expect to see a paper trail through a bank. That explains that away. And in addition, Mr. Wu did not seem on the surface to be the sort of fellow who would be knowing a fellow like Mr. Dieff many years his junior and apparently in different social circles. And so a comment is made, well, the Asians are a tightly knit community, and so they know each other, because of that. I'm having trouble with, I guess it's just straightforward definitional questions of race or racism or race-related, because if there are certain social patterns, that's permissible evidence. At what point does a social pattern like, I don't know, college boys drink, frat boys drink, I mean, that seems to me perfectly admissible. At what point is a social pattern in a group inadmissible, in your view? Well, in my view, it becomes inadmissible when you're relying on ethnic or racial stereotypes to fill in the gaps left in. You mean, in other words, a social pattern, if it's attached to a racial group, can't be talked about, but a social pattern, if it's attached to some other kind of group, is admissible? Well, and I would add that a social pattern based on race or ethnicity that has no empirical support for it other than through a juror's bias is problematic. And, you know, I think there are several cases out there that say exactly that, that racial or racial stereotypes. So. And where's your constitutional case that says that? Well, I haven't cited these in my brief, but in preparing for oral argument today, I came across several cases, just I'll cite a few of them. United States v. Cabrera, which is 222 F. 3rd, 590. No, I need a Supreme Court case. That is, I mean, we're dealing with AEDPA, of course. And we need something that the State court has done that is clearly contrary to the established Supreme Court case law. Okay. And the established Supreme Court case law that I rely on in the briefing sets out the general principles, the general Sixth Amendment principles regarding impartial decision-making. And I know that Your Honor is aware of the cases that talk about how we don't need to bring to the Court's attention a case on all fours with the case before the Court that we don't have to produce a spotted calf and its general standards and general principles can indeed be applied unreasonably. And so, no, I concede that there But I'm asking the panel to apply these general principles. And the argument is not so much this is not an objection to evidence that was presented. This is an argument that somehow the jury engaged in misconduct in the conversation in the jury room. That's correct. And my, our point about that is that that's even worse than if the jury was considering erroneously admitted evidence, because had the evidence been come in through the jury process, through the trial process in the courtroom, even though it was error, at least the defense would have then had an opportunity to address it, challenge it, confront it, and rebut it. When the information comes in in this manner, there is no opportunity to address the stereotype that Asians hoard money or Asians don't What's the significance of that if there was such a cultural bias in the inside the jury room? What's the significance of that in connection with the Wheeler challenge to the peremptory challenges? sides, the defense excused minority jurors from the panel, too. In fact, I'm not sure from my reading of the case that the government excused any more minority jurors than the defense did. So what's the nexus between these peremptory challenges and your idea that there Well, I guess I would answer that by saying that the bats in line of cases and the rules regarding the racially-based use of peremptory challenges is one mechanism established to prevent jurors from sitting on a jury that would decide a case through in the course of the jury deliberations. And so, therefore, you know, the peremptory challenges would not have been exposed in this case. But it doesn't mean it didn't happen. It doesn't mean it wasn't prejudicial constitutional error. But I guess I'm down to a minute 30 now, so. Why don't we hear from the other side, and then you've got the time reserved. Thank you very much. Thank you, and may it please the Court. This case presents a classic example of why we treat juror – the juror conversations and deliberations as largely sacrosanct, because it's too easy to come back in different cases and try to penetrate what happens in the jury room to expose fleeting conversations, things that are in passing, to try and overturn jury verdicts. There's nothing, as this Court has suggested, there's no U.S. Supreme Court precedent that identifies racial stereotyping made in passing in a jury room as creating any kind of constitutional violation that would be something that could be addressed on – in Federal habeas. In this case, while there are some cases that talk about whether or not racial bias is something that would allow you to penetrate into the jury room, this case doesn't involve racial bias, and that's precisely what the State Court said. If there are stereotypes mentioned, those stereotypes are not based on animus, then you don't have bias. And as was acknowledged, we have in this case a cultural expert who testified, and the only difference between stereotypes and a cultural expert is that one is based on extensive knowledge of community and one is based on ignorance, but that ignorance is not something that is going to allow the Court to penetrate what happens into the jury room and undo a verdict. This is particularly true with regard to the – I'll just mention the gang evidence, because every – all of the discussions with regard to gang evidence are precluded under 606B. There's no cultural or stereotyping overlay that would allow the Court to consider that at all. And with regard to the – to the juror comments about possible stereotyping, Asians keeping money in their home. I'm not sure this is going to be critical to how I view the case. Sure. But I have to say I'm not at all sure that the Federal rules of evidence should control us in terms of looking at what was admitted in a State court proceeding. Well, I believe that the – the Ninth Circuit has already held that 606B does apply to this context. And the reason it does is, first of all, the question before this Court is how can you – how do we view what the trial – what the State court found? But in looking at – at whether or not the State court's termination was reasonable or unreasonable, it's precluded by the Federal rules of evidence as to what it can consider. This – the body of information before this Court is governed by the Federal rules of evidence. And secondly, if this Court were to – Yeah, I'm not sure I agree with that. Okay. Well, if this Court were to find the State court's termination unreasonable, then it would make its own independent determination. And at that stage, it would also be bound by the Federal rules of evidence. Once you set aside the State court, it would be bound by 606B, which is why, for consistency, it's appropriate to apply 606B when reviewing the State record, because what you would have is a situation where you would take away, okay, the State court's termination was unreasonable. So in looking at it ourselves, now we are precluded with a smaller record because now 606B most certainly would apply for a termination. And you say that you think we've already decided that question? What case do you have to say we've decided that question? Forgive me. It'll take me a moment to pull it up in my brief. But I believe it is – was it McDowell? McDowell. Full site. McDowell v. Calderon, 107F3rd, 1351. This Court applied 606B in evaluating the juror question claim. But I also would submit it makes logical sense, because the upshot of setting aside the State judgment would be to conduct an independent review. And at that stage, 606B would most certainly apply. And so you are left with – you should be left with the same factual basis, the same factual record for making the judgment, reviewing what the State court did, whether or not that was a reasonable application of Supreme Court precedent. And so in that regard, I think it makes consistent logical sense. The McDowell case is a very familiar application of a very familiar rule, that is to say on Federal habeas, we can't impeach a jury verdict by allowing this in. But that's not what happened. The State court considered this evidence under State evidentiary rules. We now know what we know. And I'm not sure the McDowell case tells us whether we should ignore what we know or whether we should say, well, we know it because it was properly admitted under State law. Well, I believe so. But I also – I see what you're saying, Your Honor. But I believe that this is a – in a Federal proceeding, you can only consider the evidence that is allowed to come in under the Federal rules. So even if the State court permitted far more information to come in, even though you may say, well, now we know what happened in that jury room, it can't be considered in terms of evaluating whether or not the State court's determination was reasonable or unreasonable. Well, as I say, I'm not sure it makes a difference to how I determine the case, because even if I look at the evidence that's in here, I'm not convinced that there was jury misconduct. Well, I think ultimately that's – that's where, you know, we don't need to resolve – this Court doesn't need to resolve the application of 606B or whether or not there should be an exception. Because as they did in the – in the third iteration of Fields, even accepting all the information as – as presented to the trial court in – in State court, there was no racial animus here, nothing that would merit setting aside the verdict. And unless the Court has any other questions, I'm prepared to submit. Any questions from the bench? No. No, thank you. Response? Yes. Thank you, Your Honor. Briefly, on – on this purported distinction between stereotypes and racial animus, I quoted Justice Breyer, then Judge Breyer, in the Tavares case in my reply brief at page 15. The problem with racism in the jury room is the very use of the stereotypes. And Judge Breyer makes that clear in that Tavares case in the section that I quoted. As far as the cultural expert at the trial, that's a total red herring because the expert did not say anything about Asians hoarding money or Asians not trusting banks or anything along those lines. As far as Rule 606B's application, I would just point out that there's an exception, of course, in the rule for extraneous prejudicial information. I would – I would contend that stereotypes are just that. They're extraneous because they don't come in through the trial process. They're obviously prejudicial. And it's information because it's not just I don't like Asians. It's Asians behave in a certain way, and that's information that was then relied on to infer, or at least on the current record, you certainly can't eliminate. You know, counsel, I really wonder why didn't your client get all of those supplemental juror declarations into the record before the California court of appeal? Right. And I don't have an answer to why they didn't do it. I can tell you that our office made great efforts to try and locate them. They seem to have fallen off the face of the earth, but they were quoted in the paperwork submitted by the defendants in the course of the new trial motion proceedings, and they were relied upon by the State appellate court, which had a separate section dedicated to those supplemental declarations. And, in fact, there's some direct quotes from them. So that's what we relied on. And just finally, I'll just – Well, of course, if it isn't in the record, it's not part of the evidence presented to the court, to the State court proceeding. So how do we reconcile that? Well, what we suggested, given this unfortunate state of affairs, is to rely on the State appellate court's treatment of those supplemental declarations. And we're not contesting that the State appellate court got it wrong in setting out the substance of what those supplemental declarations said. And just quickly and finally, you know, we're bringing an intrinsic challenge, not – you know, based on anything that wasn't set before the State appellate court, and we think the – the determination of facts was unreasonable for several reasons that are discussed in the briefs. Number one, they're unsupported by the record. They don't get right what the jurors said. They don't reconcile the – the contradictory evidence. They don't take into account anything that favors Mr. Dieppe, but only cite the – the information that supports their – their result. There was an unreasonable fact-finding process. The second submission of declarations were never examined. The – and perhaps most importantly, the juror who makes the most troubling allegations was never questioned at all by the trial court. And he had already been dismissed from the jury, so there was really no reason to worry about juror contamination or the interaction between the attorneys. And last but not least, there was an error of law that infected the fact-finding because the – the State court believed that if just one or two or a minority of the jurors were impacted, that would not rise to the level of the Constitution. Okay. Thank you very much, both sides. Dieppe v. Plyler now submitted for decision.
judges: Goodwin, W. Fletcher, Mills